BTK:WPC/CWE
F. #2019R01291

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

TIMOTHY MARTINEZ,

                  Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

Docket No. 20-CR-98 (S-2) (FB)

MEMORANDUM OF LAW IN SUPPORT
OF THE GOVERNMENT'S MOTIONS *IN LIMINE*

BREON PEACE
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

William P. Campos
Chand W. Edwards-Balfour
Assistant U.S. Attorneys
    (Of Counsel)

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ..................................................................................... 2

I.  The Government Requests, Without Objection From The Defense, That The Court Issue an Order of Protection Pursuant to  18 U.S.C. § 3509(d)(3)(A) Protecting the Name and Screen User Name of the VictimS From Public Disclosure ............................................... 7

   A. Applicable Law……………………………………………………………………...7

   B. Discussion……………………………………………………………………………...7

II. The Court Should Permit the Government to Admit the Defendant's Inculpatory Electronic Communications Via Twitter and Cash App.................................................. 10

   A.  The Defendant's Statements Using Twitter and Cash App Are Not Hearsay ........... 11

   B.  The Defendant's Statements Via Twitter and Cash App Are Direct Evidence of the Charged Conduct, And Even if They Were Not, They Are Admissible Pursuant to Federal Rule of Evidence 404(b) ............................................................................ 12

      1.  The Timmay Twitter Account ........................................................................ 13

      2.  The Timothy Martinez Cash App Account ..................................................... 14

III. Evidence Regarding the Defendant's Attempted Solicitation and Sexual Exploitation of Miaa Should Be Admitted .................................................................................. 16

IV. The Court Should Adopt the Government's uncontested Proposal Regarding the Display of Child Exploitative Images and Video Clips at Trial.................................................. 16

V.  The Court Should permit Evidence regarding the defendant's status as a police officer and mandated reporter of child abuse ............................................................... 18

VI. The Defendant Should be Precluded From Introducing Evidence Regarding His Family, Purported Girlfriend or Health .......................................................................... 19

   A.  Applicable Law .......................................................................................... 19

   B.  Discussion ................................................................................................. 19

VII. The Defendant Should Be Precluded From Cross Examining the Government's Witnesses on or Otherwise Challenging the Legality of the Search Warrants and Other Searches Executed In This Matter ..................................................................... 20

VIII.   The Court Should Preclude Evidence and Argument Concerning Possible Punishment and Collateral Consequences .......................................................................................... 21

   A.   Applicable Law ............................................................................................................ 21

   B.   Discussion ................................................................................................................... 22

IX. Evidence and Argument Regarding Other Sexual Behavior by the Victims and/or Any Purported Sexual Predispositions of the Victims Are Inadmissible Under Federal Rule of Evidence 412 .................................................................................................................. 23

   A.   Applicable Law ............................................................................................................ 23

   B.   Discussion ................................................................................................................... 25

## Table of Authorities

**Cases**

*Clark v. Ricketts,*
 958 F.2d 851 (9th Cir. 1991) ............................................................... 9

*Davis v. Alaska,*
 415 U.S. 308 (1974) ............................................................................ 23

*Del v. Van Arsdall,*
 475 U.S. 673 (1986) ............................................................................ 27

*Doe v. United States,*
 666 F.2d 43 (4th Cir. 1981) ............................................................... 26

*Globe Newspaper Co. v. Sup. Ct. for Norfolk Cnty.,*
 457 U.S. 596 (1982) .............................................................................. 7

*Jones v. Goodwin,*
 982 F.2d 464 (11th Cir. 1993) ........................................................... 28

*Kia P. v. McIntyre,*
 235 F.3d 749 (2d Cir.2000) ................................................................ 18

*Miller v. United States,*
 1994 WL 329537 (6th Cir. July 8, 1994) ............................................. 9

*Old Chief v. United States,*
 519 U.S. 172 (1997) ............................................................................ 15

*Quartararo v. Hanslmaier,*
 186 F.3d 91 (2d Cir. 1999) ................................................................. 11

*Shannon v. United States,*
 512 U.S. 573 (1994) ...................................................................... 21, 22

*Taylor v. Illinois,*
 484 U.S. 400 (1988) ............................................................................ 26

*United States v. Alvarez,*
 601 F. App'x 16 (2d Cir. Feb. 3, 2015) ............................................. 24

*United States v. Barone,*
 913 F.2d 46 (2d Cir. 1990) ................................................................. 11

*United States v. Battaglia, No. 05-CR-774*
 (KMW), 2008 WL 144826 (S.D.N.Y. Jan. 15, 2008) ......................... 19

*United States v. Bellomo,*
 176 F.3d 580 (2d Cir. 1999) ............................................................... 11

*United States v. Bifield,*
 702 F.2d 342 (2d Cir. 1983) ............................................................... 26

*United States v. Blume,*
 967 F.2d 45 (2d Cir. 1992) ................................................................. 22

*United States v. Cephus,*
 684 F.3d 703 (7th Cir. 2012) ............................................................. 24

*United States v. Chambers,*
 642 F.3d 588 (7th Cir. 2011) ............................................................. 15

*United States v. Davis,*
 890 F.2d 1373 (7th Cir. 1989) ........................................................... 11

*United States v. Detrich,*

865 F.2d 17 (2d Cir. 1988) ..................................................................... 12

United States v. DiMarzo,
80 F.3d 656 (1st Cir. 1996) ................................................................. 22

United States v. Doe,
655 F.2d 920 (9th Cir. 1981) ................................................................. 8

United States v. Dominguez-Gabriel,
511 F. App'x. 17 (2d Cir. 2013) ......................................................... 11

United States v. Dunloy,
584 F.2d 6 (2d Cir. 1978) ................................................................... 11

United States v. Dupree,
706 F.3d 131 (2d Cir 2013) ................................................................. 12

United States v. Edwards,
631 F.2d 1049 (2d Cir. 1980) ............................................................. 21

United States v. Elbert,
561 F.3d 771 (8th Cir. 2009) ......................................................... 24, 26

United States v. One Feather,
702 F.2d 736 (8th Cir. 1983) ............................................................. 27

United States v. Graham, No. 12-CR-311,
2013 WL 321568 (W.D.N.Y. Jan. 28, 2013) ....................................... 24

United States v. Griffith,
284 F.3d 338 (2d Cir. 2002) ................................................................. 7

United States v. Harris,
491 F.3d 440 (D.C. Cir. 2007) ........................................................... 19

United States v. Hite,
916 F. Supp. 2d 110 (D.D.C. 2013) ................................................... 15

United States v. Howard,
998 F.2d 42 (2d Cir. 1993) ................................................................. 20

United States v. Kelly, No. 07-CR-374
(SJ), 2008 WL 5068820 (E.D.N.Y. Jul. 10, 2008) ............................ 7, 8

United States v. Lewis,
110 F.3d 417 (7th Cir. 1997) ............................................................. 22

United States v. Livoti,
196 F.3d 322 (2d Cir. 1999) ............................................................... 14

United States v. Maso, No. 07-CR-10858,
2007 WL 3121986 (11th Cir. Oct. 26, 2007) ....................................... 9

United States v. Miller,
641 F. Supp. 2d 161 (E.D.N.Y. 2009) ............................................... 19

United States v. Paccione,
949 F.2d 1183 (2d Cir. 1991) ............................................................. 19

United States v. Paulino,
445 F.3d 211 (2d Cir. 2006) .......................................................... 14, 15

United States v. Pena,
8 F. Supp. 3d 568 (S.D.N.Y. 2014) ....................................................... 9

United States v. Polouizzi,
564 F.3d 142 (2d Cir. 2009) ............................................................... 15

United States v. Reese,

933 F. Supp. 2d 579 (S.D.N.Y. 2013) ........................................................... 16
*United States v. Rivera, No. 13-CR-149*
   (KAM), 2015 WL 1886967 (E.D.N.Y. Apr. 24, 2015) ..................................... 24
*United States v. Romone*,
   218 F.3d 1229 (10th Cir. 2000) ................................................................. 25
*United States v. Thomas*,
   116 F.3d 606 (2d Cir. 1997) ...................................................................... 22
*United States v. Thompson*,
   178 F. Supp. 3d 86 (W.D.N.Y. 2016) .......................................................... 8
*United States v. Watts*,
   934 F. Supp. 2d 451 (E.D.N.Y. 2013) ........................................................ 22
*United States v. Wilson*,
   11 F.3d 346 (2d Cir. 1993) ........................................................................ 21
*United States v. Wright*,
   343 F.3d 849 (6th Cir. 2003) .................................................................... 11
*Washington v. Walsh, No. 08-CV-6237,*
   2010 WL 423056 (S.D.N.Y. Feb. 5, 2010) ................................................... 9

**Statutes**

18 U.S.C. § 1591 ..................................................................................... 24
18 U.S.C. § 2422 ..................................................................................... 24
18 U.S.C. § 3509 ............................................................................... 1, 7, 8
18 U.S.C. § 3771 ..................................................................................... 25
N.Y. Soc. Serv. Law § 413 ......................................................................... 8
N.Y. Soc. Serv. Law § 420 ......................................................................... 19

**Rules**

Federal Rule of Evidence 104 ..................................................................... 20
Federal Rule of Evidence 401 ................................................................ 20, 21
Federal Rule of Evidence 402 ................................................................ 21, 26
Federal Rule of Evidence 403 ................................................ 14, 19, 20, 21, 27, 28
Federal Rule of Evidence 404 ................................................ 12, 14, 15, 16, 18, 28
Federal Rule of Evidence 405 ..................................................................... 19
Federal Rule of Evidence 412 ........................................... 2, 23, 24, 25, 27, 28
Federal Rule of Evidence 414 ..................................................................... 16
Federal Rule of Evidence 801 ................................................................ 11, 12
Federal Rule of Evidence 802 ..................................................................... 11

**Other Authorities**

Weinstein's Federal Evidence, § 104.17 .......................................................... 20

<u>PRELIMINARY STATEMENT</u>

The government respectfully submits this memorandum of law in support of its motions <u>in limine</u> in anticipation of trial, which is scheduled to begin on April 24, 2023.  The defendant is charged with possession of child pornography, receipt and attempted receipt of child pornography, and with two counts of sexual exploitation and attempted sexual exploitation of children.  The government respectfully requests that the Court:[1]

1) issue an Order of protection pursuant to 18 U.S.C. § 3509(d)(3)(A), protecting the names and screen user names of the victims from public disclosure;

2) permit the government to introduce evidence of the defendant's inculpatory electronic communications via Twitter and Cash App;

3) permit the government to introduce evidence regarding the defendant's attempted solicitation and sexual exploitation of an individual using the Twitter account "MyiaaMyiaa13";

4) permit the government to display and publish to the jury the child exploitative images and video clips in accordance with the government's proposed display protocol;

5) permit the government to introduce evidence regarding the defendant's status as a police officer and mandated reporter of child abuse;

6) preclude the defendant from introducing evidence regarding his family, purported girlfriend or health;

7) preclude the defendant from cross examining the government's witnesses on, or otherwise challenging, the legality of the search warrants and other searches executed in this case;

---

[1] This memorandum cannot anticipate every type of evidence and testimony that will be offered at trial and does not detail all the specific testimony the government will elicit at trial. The government respectfully reserves its right to supplement this filing with additional papers setting forth legal authority for the introduction of evidence and/or additional motions <u>in limine</u> as legal issues are identified closer to trial, the government interviews potential witnesses, or in response to any objection by defense to the introduction of evidence.  The government will meet and confer with defense counsel to attempt to resolve any issues as they arise prior to engaging in motion practice.

8) preclude the defendant from presenting evidence and argument concerning possible punishment and collateral consequences; and

9) preclude the defendant from providing evidence and argument regarding other sexual behavior by the victims and/or any purported sexual predispositions of the victims as inadmissible under Federal Rule of Evidence 412.

For the reasons set forth herein, the Court should grant the government's motions in limine.

<u>STATEMENT OF FACTS</u>

In 2019, the Department of Homeland Security, Homeland Security Investigations ("HSI") began investigating the defendant, New York City Police Officer Timothy Martinez, after receiving a referral from a police department in Texas that identified a Twitter account associated with the defendant as having engaged in sexually explicit conversations with an assumed minor. [2]  On February 7, 2020, the defendant made his initial appearance on a Complaint charging him with possession of child pornography.

On February 27, 2020, a grand jury returned an indictment charging the defendant with possession and receipt and attempted receipt of child pornography.  <u>See</u> ECF No. 9.  On October 31, 2022, a grand jury returned a superseding indictment charging the defendant with the additional charge of sexual exploitation and attempted sexual exploitation of a child, Jane Doe #1.  <u>See</u> ECF No. 41.  Further, on January 9, 2023, a grand jury returned a second superseding indictment charging the defendant with another count of sexual exploitation and attempted sexual exploitation of a child, Jane Doe #2.  <u>See</u> ECF No. 45.

The evidence at trial will demonstrate that the defendant engaged in sexually explicit conversations with an individual whom he believed to be a minor and paid this

---

[2] The proffer of facts set forth herein is not a complete statement of all facts and evidence of which the government is aware or will seek to introduce at trial.  Unless otherwise indicated, all statements set forth in this memorandum are provided in sum and substance and in relevant part.

individual for sexually explicit images and videos depicting minors, possessed images of child pornography, and attempted to persuade Jane Doe #1 and Jane Doe #2 to masturbate and show their genitals and pubic area to him on live video chats.

<u>Communications with "MyiaaMyiaa13" on Twitter</u>

At trial, the government expects to prove that the defendant used his Twitter account to exchange numerous sexually explicit communications with an individual he believed was a minor female.  Some examples of the defendant's communications include:

- On June 4, 2018, the twitter account "MyiaaMyiaa13" (hereinafter, "Miaa") sent a direct message via twitter to the defendant's account stating, "Fingering vids $30/nsex vids $60/
nCamshow $70/nDancing in panties $35/ nDancing naked$40/n2 vids everyday for 2 weeks $100."

- In response, the defendant said, "Ok cash app rite?/nAn can you cam today?  I should be home around 11am."  Miaa subsequently sent a video message entitled, "http//t.co/jviirbwciu-image/video," and the defendant replied by saying, "Gonna send 60.you send vids here."  Additionally, Miaa sent another video message to the defendant saying, "http//t.co/qxfebvigha- image/video," and followed up stating, "we can cam later my friend here so you might get girl on girl action."  The defendant responded, "I'm getting hard princess."  Miaa then asked, "lol u get vid," and the defendant answered, "Yes I did Mmmmm . . . Mmmm damn yummy to bad you weren't in NYC . . . Damn I'm so horney now."

- Later, on June 4, 2018, the defendant  asked, "when can you suck mine" referred to his penis, and Miaa replied, "when you come here I got you."  Then the defendant said, "Sent ($30 sent via cash app) . . . what day you free" and Miaa responded, by sending the image message "https://t.co/y3wtaprspm" and stating "Everyday lol school out."  A few messages later, the defendant stated, "I have SKYPE" and soon after followed up by saying, "TOM.SULLEN."  The Skype user names "Tom Sullen" and "Tim Sullen" were used by the defendant in his communications with Jane Doe #1 and Jane Doe #2.

- On June 11, 2018, the defendant sent Miaa a message asking, "Bby can u send me couple pic of you?  or you can't cuz ur moms home."  Miaa responded by stating, "I'm on my moms phone but I'll show my pussy RQ," and Miaa followed up by sending the following image message "https://t.co/wqsi855jug. Image/vid sent."  The defendant replied, "Mmmm that pussy wet . . .  Damn rubb that oussy for me . . .   To bad u cant video rite quick. Mmmm . . .  I wanna cum so bad."  Miaa then stated, "cum to this. N u can send $50 to help me out I onlu need $200 more" and provided the following image

message "https://t.co/65xwu14347."   The defendant followed up by stating, "Im already stroking my fat cock . . . I was bout to send the $50 if I got more."

Communications with Jane Doe #1 on Skype

Additionally, the government expects to prove that the defendant used his Skype account to exchange sexually explicit communications with a 16-year old girl, who the defendant believed was a minor female, as he attempted to persuade her to masturbate and show him her genitals and pubic area during a video message component of the communication.  Some examples of such communications are as follows:

- On October 12, 2016, at approximately 4:41 p.m., Jane Doe #1 asked the defendant, "did you still want to vide chat?" and he replied, "yes go ahead call me" and moments later it appears that the video chat is connected.   The defendant then says "thr [sic] you are again and the smile . . . mmhhmm cutie" and then asked, "so wht [sic] up hun" and Jane Doe #1 responded, "nm, you?" to which the defendant responded, "besides showing me more cleavage :P."  Moments later, the defendant said, "yea I wont just come out an [sic] show you my dick . . .  its just rude and disrespectfuk [sic] ya know . . . hey hold on im gonna jum opn [sic] my bed :P . . . better lol . . . thr is the smile again."

- Later during the same chat, the defendant continued, "hmmm can you pull your shit down a lil more :P . . . : omg wow . . . I see you biting your lip . . . your nipples hard baby . . . mmm cam down a li [sic]."  He then asked, "are yout [sic] tits the only thing that feel good rite [sic] now" and Jane Doe #1 replied, "my u know.." and the defendant requested, "tell me baby mmmm."  Jane Doe #1 answered, "my pussy."  The defendant then directs Jane Doe #1, "mmm so don't you rub it . . . mmm lean bak [sic] 1 hand on those perfect tits an one on your hot pussy."  Jane Doe #1 replies, "you can see my ass tho," and the defendant stated, "mmmmm . . . mmm yes baby."

- On January 19, 2017, at approximately 7:32 a.m., during another Skype chat with Jane Doe #1, the defendant asked, "rule are in place to help you an which on you wanna break [sic]" and Jane Doe #1 replies, "All of them lmao."  The defendant responded, "hahahaha bad girl lol."  Jane Doe #1 then stated, "But I miss so many things," and the defendant replied, "I remember you telling me but you will get them bak just a bit of tim [sic]." Jane Doe #1 replied, "Yay a . . thanks for being like every other person in the world." The defendant then said, "they looking out for you but yu can do wht you want."  Jane Doe #1 replied, "I'm not doing anything . . I'm doing everything I'm told but I'm sorry if it's a little upsetting that I just lost over a year of my childhood.  I have one moe year before college and a job and everything else.."

4

Communications with Jane Doe #2 on Skype

           The government also expects to prove that the defendant used his Skype account to exchange sexually explicit communications with Jane Doe #2 over a years-long period, starting when she was approximately 13 years old.  The evidence will show that the defendant believed Jane Doe #2 was a minor female as he attempted to persuade her to masturbate and show her genitals and pubic area during video message communications.  Some examples of such communications are as follows:

- On July 12, 2016, at approximately 8:08 a.m., the defendant said to Jane Doe #2, "OMG just got the last pic of you in boy shorts and a bra.... mmmmmmm I'm sorry just got me thinking bak couple years when we 1st started chatting lol."  Jane Doe #2 is expected to testify about their prior video messages and what they discussed during the prior years.

The Defendant's Purchases on Cash App

           Further, the government expects to prove that the defendant used an online payment application known as Cash App to send monetary payments to Miaa and two other users with the Snapchat names "The Thickest" and "Wet" to purchase videos of child pornography.  For example, on June 1, 2018, the defendant made three payments to "The Thickest" which included, (a) a $25 payment, (b) an $80 payment, and (c) a $150 payment that was labeled for "dinner."  Subsequently, on June 4, 2018, the defendant made three payments to Miaa for $ 60, $ 100, and $30, respectively, three payments to "The Thickest," for $25, $ 50, and $ 50, respectively, and requested a payment from "Wet" that was refused by "Wet" for $ 55 for the subject "13 yo vid."  During a voluntary interview with law enforcement on September 24, 2019, as will be discussed below, the defendant conceded that he thought the "13 yo vid" subject "probably means age."

<u>The Defendant's Child Pornography on his Laptop</u>

Similarly, the government expects to prove that the defendant possessed images and videos of child pornography on a laptop computer that was seized from the defendant's residence during the execution of a search warrant.  Law enforcement agents found hundreds of child pornographic files on the defendant's laptop.  At trial, the government plans to offer at least one witness familiar with a known victim depicted in the child pornographic content.  That witness will likely testify about the victim being a real person who was a minor at the time the video was created.

<u>The Defendant's Voluntary Statements to Law Enforcement</u>

The government also intends to introduce the defendant's non-custodial voluntary statements to law enforcement agents, in which the defendant admitted to law enforcement agents, among other things that: (a) his passport application details were accurate, except for his address; (b) his Time Warner subscriber details were accurate; (c)  he recognized Miaa's accounts on Twitter and Cash App, had communications with Miaa on Twitter, bought at least one video from Miaa, recognized profile pictures from Miaa's Twitter account that agents showed him, and he believed that at least one sexually explicit video that Miaa sent to him was of a "young" girl who was "at least 17 [or] 16 if that"; and that (d) the Cash App account law enforcement agents showed the defendant was his, he remembered certain accounts with whom he exchanged payments, he thought the subject "13 yo vid"  "probably means age," and that no one else had access to his Cash App account.

I.      THE GOVERNMENT REQUESTS, WITHOUT OBJECTION FROM THE DEFENSE,
        THAT THE COURT ISSUE AN ORDER OF PROTECTION PURSUANT TO
        18 U.S.C. § 3509(D)(3)(A) PROTECTING THE NAME AND SCREEN USER NAME
        OF THE VICTIMS FROM PUBLIC DISCLOSURE

        A.      Applicable Law

                While "the press and general public have a constitutional right of access to

criminal trials," that right "is not absolute."  Globe Newspaper Co. v. Sup. Ct. for Norfolk Cnty.,

457 U.S. 596, 604-06 (1982).  The public's interest in access to criminal trials is outweighed

where there is reason to believe that disclosure would be detrimental to a victim, including minor

children.  Indeed, courts routinely preclude reference to the names of victims in sexual assault

cases.  See, e.g., United States v. Griffith, 284 F.3d 338, 342 n.1 (2d Cir. 2002) (referring to

minor victims recruited into prostitution by only their first names in order to comply with

18 U.S.C. § 3509); United States v. Kelly, No. 07-CR-374 (SJ), 2008 WL 5068820, at *2

(E.D.N.Y. Jul. 10, 2008) (granting protective order with respect to victims' names in sex

trafficking case including those who were no longer minors).

        B.      Discussion

                The defendant is charged with attempting to persuade two minors to masturbate

and show their genitals and pubic area during video messages via the internet.  In his efforts to

persuade Jane Doe #1 and Jane Doe #2 to engage in sexual activity during video chats, he

contacted each of them numerous times via Skype messaging.  Jane Doe #1 was sixteen years

old when the defendant persuaded her to produce sexually explicit images to him via a live chat

over Skype.  Jane Doe #1's username on Skype was her true name.  Jane Doe #2 was between

the ages of thirteen-and-seventeen when the defendant persuaded her produce to sexually explicit

images to him via a live chat over Skype.  Jane Doe #2's username on Skype was her true name.

As to potential harm, the defendant's intentions vis-à-vis Jane Doe #1 and Jane Doe #2 are evidenced in numerous explicit exchanges between the defendant and each of them, respectively.  These include references to sexual acts the defendant claimed he wished to perform on Jane Doe #1 and Jane Doe #2 and the live video exchanges that occurred between the defendant and Jane Doe #1 and Jane Doe #2, respectively.  Disclosure of Jane Doe #1's and Jane Doe #2's names or screen usernames within Skype in connection with this evidence would cause Jane Doe #1 and Jane Doe #2 unnecessary embarrassment.  This is particularly true in light of the media attention this matter has attracted to date, including reports in the NBC New York and the Washington Times, among others.  See, e.g., https://www.nbcnewyork.com/ news/local/crime-and-courts/nypd-officer-charged-with-possessing-hundreds-of-child-porn-images/2290180/; https://www.fox5ny.com/news/nypd-officer-charged-possessing-child-pornography; https://www.washingtontimes.com/news/2020/feb/14/nypd-officer-charged-with-possessing-child-pornogr/ (all last visited on November 3, 2022).

Against this backdrop, it is virtually certain that publicly disclosing Jane Doe #1's and Jane Doe #2's names or screen usernames would expose them to the kind of harm that Section 3509 seeks to avoid.  See United States v. Doe, 655 F.2d 920, 922 n.1 (9th Cir. 1981) (use of pseudonyms justified when necessary to protect individuals from "harassment, injury, ridicule or personal embarrassment"); United States v. Thompson, 178 F. Supp. 3d 86, 96 (W.D.N.Y. 2016) (finding a compelling interest in limiting the identification of minor victims given the potential for explicit evidence in the underlying case to have adverse personal, professional and psychological consequences); Kelly, 2008 WL 5068820, at *2 (E.D.N.Y. Jul. 10, 2008) (granting protective order with respect to victims' names in sex trafficking case due to the potentially explicit nature of the expected testimony).

In addition, protecting Jane Doe #1's and Jane Doe #2's identities will not interfere with the defendant's right to confront the witnesses against him.  With respect to Jane Doe #1 and Jane Doe #2, who are identified in the second Superseding Indictment, the defendant will still have an opportunity to cross-examine them if they testify, and appellate courts addressing the issue have routinely held that allowing a witness to testify using a pseudonym does not violate a defendant's Sixth Amendment right to confront witnesses.[3]  See Washington v. Walsh, No. 08-CV-6237(DAB), 2010 WL 423056, at *9 (S.D.N.Y. Feb. 5, 2010) (a law enforcement officer "testifying under a badge number rather than his name does not infringe upon a defendant's right to confront the witnesses against him"); United States v. Pena, 8 F. Supp. 3d 568, 573 (S.D.N.Y. 2014) (allowing witness to testify at trial using an alias and holding that the government need not reveal the witness's true name to the defendant); United States v. Maso, No. 07-CR-10858, 2007 WL 3121986, at *4 (11th Cir. Oct. 26, 2007) ("The district court did not violate [the defendant's] right to confront witnesses by allowing the [cooperating witness] to testify using a pseudonym."); Miller v. United States, 28 F.3d 1213 (table), 1994 WL 329537, *8 (6th Cir. July 8, 1994) ("[T]here is no absolute right of an accused to have a jury hear a witness's true name and address."); Clark v. Ricketts, 958 F.2d 851, 855 (9th Cir. 1991) (same).

For the reasons set forth above, the potential harm to Jane Doe #1 and Jane Doe #2 counsels strongly in favor of avoiding the needless disclosure of their identities in connection with the defendant's prosecution.  Accordingly, the government respectfully requests an order of protection, requiring that, throughout the course of this case, including any motion

---

[3] Pursuant to a protective order, the government has disclosed the victims' names and screen user names.

9

practice, trial, sentencing and any ancillary proceedings, Jane Doe #1 and Jane Doe #2, as

identified in the second Superseding Indictment, be referred to only as Jane Doe #1 and

Jane Doe #2.  The government also respectfully requests that the trial transcripts or transcripts of

other proceedings thereafter be redacted to reflect "Jane Doe #1" and "Jane Doe #2" as the

victims' names.  Additionally, the government requests that, during trial, all parties be precluded

from publishing documents to the gallery that reflect the victims' names or screen usernames.

The government previously conferred with defense counsel about this request.

Defense counsel informed the government that the defense did not oppose this government

request.

II.   THE COURT SHOULD PERMIT THE GOVERNMENT TO ADMIT THE
      DEFENDANT'S INCULPATORY ELECTRONIC COMMUNICATIONS VIA
      TWITTER AND CASH APP

The government seeks to introduce the electronic messages that the defendant

sent using Cash App under an account that he held in his name in June 2018 and that the

defendant sent using Twitter, under the Twitter handle Timmay in June 2018, to certain

individuals who are not identified in the second Superseding Indictment, as well as third party

responses to those messages.  These messages are direct evidence of the charged conduct

because they provide evidence of, among other things of: (1) how the defendant contacted,

befriended and groomed individuals he assumed to be minors in an effort to obtain child

pornography; (2) how the defendant requested or solicited child pornography from the

individuals; (3) how the defendant communicated to the individuals he believe to be minors that

he wanted them to produce images of themselves for him, as opposed to sending him images that

they already possessed; and of (4) the defendant's usage and/or ownership of the Twitter handle

and Cash App account at issue, as well as third party responses to these messages.  For the sake

of clarity, the government does not intend to admit any nude or pornographic images sent to the defendant by the victims who are not identified in the second Superseding Indictment, except to the extent that it such images are direct evidence for the receipt charge.

For the following reasons, the electronic messages that the defendant sent to certain individuals who are not identified in the second Superseding Indictment using Twitter and Cash App in June 2018, and witness testimony regarding these messages should be admitted at trial.

A.  <u>The Defendant's Statements Using Twitter and Cash App Are Not Hearsay</u>

The Federal Rules of Evidence typically prohibit the receipt at trial of out-of-court statements offered to prove the truth of the matter asserted.  Fed. R. Evid. 801, 802.  However, out-of-court statements made by the defendant are admissible by the government in a criminal trial to prove the truth of the facts stated therein.  <u>See</u> Fed. R. Evid. 801(d)(2)(A).  Moreover, when a defendant makes statements in the context of a conversation with a third party, the statements of the third party are admissible non-hearsay to the extent that they are necessary to place the defendant's statements in proper context.  <u>See</u> <u>United States v. Barone</u>, 913 F.2d 46, 49 (2d Cir. 1990); <u>United States v. Davis</u>, 890 F.2d 1373 (7th Cir. 1989).  Additionally, an out-of-court statement made by a third party is not hearsay if offered as circumstantial evidence of the defendant's state of mind, rather than for its truth.  <u>United States v. Detrich</u>, 865 F.2d 17, 21 (2d Cir. 1988); <u>United States v. Dunloy</u>, 584 F.2d 6, 11 (2d Cir. 1978).  Notably, questions or commands do not generally constitute hearsay.  <u>See</u> <u>United States v. Bellomo</u>, 176 F.3d 580, 586-87 (2d Cir. 1999); <u>United States v. Dominguez-Gabriel</u>, 511 F. App'x. 17, 20 (2d Cir. 2013); <u>Quartararo v. Hanslmaier</u>, 186 F.3d 91, 98 (2d Cir. 1999); <u>United States v. Wright</u>, 343 F.3d 849 (6th Cir. 2003) ("[A] question is typically not hearsay because it does not assert the truth or

11

falsity of a fact.  A question merely seeks answers and usually has no factual content.").  Finally, statements are admissible as nonhearsay to show the effect on the listener, i.e., to demonstrate what if any actions the defendant took, or responses the defendant gave, based on the third party's statements.  See Fed. R. of Evid. 801(c); United States v. Dupree, 706 F.3d 131, 136 (2d Cir 2013) ("[A] statement offered to show its effect on the listener is not hearsay.").

Because the government will establish at trial that the defendant, in fact, made the statements, the defendant's Twitter and Cash App messages are clearly nonhearsay and admissible for their truth pursuant to Federal Rule of Evidence 801(d)(2), as.  Moreover, statements made by the third parties to the defendant on Twitter and Cash App are admissible both because they place the defendant's statements in context and because of the effect of those statements on the individual who received them, , i.e., the defendant.  The jury should be permitted to read the statements of the third parties with whom the defendant communicated solely to obtain child pornography because they are not being offered for the truth of the matter asserted and these statements contextualize the defendant's statements, show the effect of such statements on the defendant, and, most importantly, are critical evidence of the defendant's mental state.

B.   The Defendant's Statements Via Twitter and Cash App Are Direct Evidence of the Charged Conduct, And Even if They Were Not, They Are Admissible Pursuant to Federal Rule of Evidence 404(b)

The government seeks to introduce evidence that the defendant repeatedly sent messages to Miaa on Twitter in 2018 and to Miaa, "Wet," and "The Thickest" via Cash App in June 2018, with the goal of persuading them to produce and send him sexually explicit images of minor girls in ways that catered to the defendant's particular sexual interests.

12

1.      The Timmay Twitter Account

When using the Timmay Twitter account, the defendant held himself out as an adult in the military when speaking with Miaa.  See, e.g., TM_000013 ("Been there for military"); id ("im at military rite now I fly home tue").

The defendant groomed his victims with flattery.  See, e.g., TM_000013 ("Mmmm ok cant wait grn hard already then after cam meet"); id ("To [sic] bad u cant video rite quick. Mmmm I wanna cum so bad"); id ("That pussy looks so tight").

Additionally, the defendant was clear in his requests for images and live material. See, e.g., TM_000013 ("Ok cash app rite?/nAn can you cam today? I should be home around 11am"); id ("why cant you be close lol. We can make our own vid"); id ("ok you have time to cam later"); id ("Bby can u send me couple pic of you?"); id ("please Bby I wanna cum with you.. I wanna show you my thick cock.. An tell me where it will fit").  To the extent that the defendant intends to argue that he did not persuade victims to engage in sexually explicit conduct or take photos and videos of themselves doing so, the government is entitled to present direct evidence of the fact that the defendant routinely asked for nude pictures, including "new" pictures, specifically for him.  These requests, which shed light on the defendant's mental state when he was engaging minors and seeking pictures, clearly evidence his intention to obtain child pornography and to have his victims create child pornography specifically for him.  Additionally, the defendant's positive encouragement when he received pictures is clear evidence of intent to obtain additional pictures that were just as, if not more, explicit than the ones he had previously received.  Further, the messages are direct evidence of how the defendant received and attempted to receive child pornography, as charged in the second Superseding Indictment.

2.    The Timothy Martinez Cash App Account

Similarly, the statements made by the defendant on his Cash App account from June 2018 are also evidence of his attempts to obtain child pornography.  In June 2018, the defendant made numerous payments through his Cash App account to Miaa and others for sexual videos that he described during his voluntary interview with agents.  Specifically, on June 4, 2018, the defendant requested $55 from an individual with the Cash App account name "Wet" for the subject "13 yo vid."  See TM_000013.  Further, during his voluntary interview with agents, the defendant conceded that "13 yo vid" likely referred to the age of someone in a video that was being exchanged and he noted that he would not have paid for such a video. TM_000002.

Evidence that is admissible pursuant to Rule 404(b) should not be excluded on grounds of unfair prejudice when the evidence does not "involve conduct more inflammatory than the charged crime[s]."  United States v. Paulino, 445 F.3d 211, 223 (2d Cir. 2006).  Thus, where the uncharged crime or misconduct is similar in nature to the charged crimes, Rule 404(b) evidence is generally admissible under the Rule 403 balancing test.  See, e.g., id.; United States v. Livoti, 196 F.3d 322, 326 (2d Cir. 1999) (district court properly admitted evidence of prior crimes that was not "more inflammatory" than the charged crime); see also Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.").

Here, the defendant's communications establish the defendant's identity, motive, intent, modus operandi and lack of mistake or accident in sending numerous messages to numerous minors seeking child pornography.  Indeed, the government must establish at trial not only that the defendant was using these accounts, but also his intent in doing so.  This material

14

will establish that the defendant was using the accounts to solicit minors and obtain child

pornography, and that his actions with respect to the victims identified in the second Superseding

Indictment were not the result of an accident or a mistake, but instead part of a greater scheme

that the defendant employed to satisfy his sexual interest in child pornography.  See United

States v. Hite, 916 F. Supp. 2d 110, 117 (D.D.C. 2013) (evidence of a defendant's sexual

attraction to children or teenagers—as demonstrated through sexually-oriented messages

discussing illicit sexual activity with minors—is probative of the specific intent element of

criminal statutes involving sexual activity with minors, and therefore admissible under Rule

404(b)); see also United States v. Chambers, 642 F.3d 588, 595 (7th Cir. 2011) ("Prior instances

of sexual misconduct with a child victim may establish a defendant's sexual interest in children

and thereby serve as evidence of the defendant's motive to commit a charged offense involving

the sexual exploitation of children.") (citations omitted).

   Moreover, the probative value of the above-described evidence is not

substantially outweighed by the risk of unfair prejudice to the defendant.  See Old Chief v.

United States, 519 U.S. 172, 180 (1997) (defining "unfair prejudice" in criminal context to refer

to "the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt

on a ground different from proof specific to the offense charged"); Paulino, 445 F.3d at 223.

Importantly, this evidence is in no way "more inflammatory" than the very serious child

exploitation felonies with which the defendant is charged.  Id.; see also United States v. Reese,

933 F. Supp. 2d 579, 582 (S.D.N.Y. 2013) (prior convictions were not more prejudicial than

probative, as they did not involve conduct any more "sensational or disturbing" than the charged

offenses).  Any prejudice may be cured by an instruction by the Court.  For these reasons, the

defendant's Twitter and Cash App messages described herein should be admitted at trial.

III.   EVIDENCE REGARDING THE DEFENDANT'S ATTEMPTED SOLICITATION
AND SEXUAL EXPLOITATION OF MIAA SHOULD BE ADMITTED

The government respectfully submits that evidence of the defendant's attempted

solicitation of and participation in sexual acts with Miaa should be admitted at trial: (i) as direct

evidence of attempted receipt of child pornography as charged in the second Superseding

Indictment; (ii) pursuant to Federal Rule of Evidence 414(a), as evidence of prior child

molestation; and (iii) in the alternative, pursuant to Federal Rule of Evidence 404(b), as evidence

of intent, motive, knowledge, identity, absence of mistake and a common scheme or plan.

At trial, the government will prove that the defendant sought out sexual

encounters with and, engaged in sexual communications with Jane Doe #1, Jane Doe #2, and

Miaa, three individuals the defendant believed were minors.  Jane Doe#1 and Jane Doe #2 were

minors and Miaa was presented as a minor.  The government will also prove that the defendant

video-chatted and exchanged messages with Jane Doe #1, Jane Doe #2 in order to attempt to

persuade them to masturbate and display their genitals and pubic areas, and exchanged messages

with Miaa to coordinate sexual encounters and persuade Miaa to engage in sexually explicit

video chats as well.  These messages demonstrate that the defendant was interested in pursuing

sexual encounters with minors and attempted to engage in sexual acts with individuals he

understood to be minors.  In Twitter direct message exchanges between the defendant and Miaa

throughout June 2018, the defendant discussed engaging in sex, other sex acts, sexually explicit

videos chats, and the potential price for or other details for engaging in sex.

IV.   THE COURT SHOULD ADOPT THE GOVERNMENT'S UNCONTESTED
PROPOSAL REGARDING THE DISPLAY OF CHILD EXPLOITATIVE IMAGES
AND VIDEO CLIPS AT TRIAL

The government respectfully proposes that, at trial, it will: (i) warn the jury before

it shows a child exploitative image or video clip; (ii) show child exploitative images for

approximately 3 seconds and video clips no longer than 10 seconds; and (iii) not show any of the images or clips to the courtroom gallery.  The government has already taken substantial steps, as it does in every child pornography case, to limit its publication of child exploitative material to the jury to avoid traumatizing jurors unnecessarily.

First and foremost, the government plans to introduce no child exploitative images beyond what is necessary to prove the government's case.  However, in child pornography cases, the "government generally has a right to present evidence . . . to establish the 'human significance' of the fact and 'to implicate the law's moral underpinnings.'"  United States v. Polouizzi, 564 F.3d 142, 153 (2d Cir. 2009) (quoting Old Chief, 519 U.S. at 187-88). Further, the government must meet its burden under each count, including proving the defendant's knowledge and intent, and that the images or videos involve a real child and meet the legal definition of sexually explicit material.  To that end, the government intends to admit images and videos which pertain only to conduct related to the charges identified in the second Superseding Indictment.

Although the entirety of the videos in the defendant's possession will be introduced into evidence, the government will prepare shortened video clips of these videos to publish to the jury.  The government has previously made these images and videos available to defense counsel, and should defense counsel wish to review them again, the government is prepared to do so at a mutually convenient time.  The government respectfully requests that the Court adopt the government's proposal regarding the limited publication of sexually explicit images.

The government previously conferred with defense counsel about this request. Defense counsel informed the government that the defense did not oppose this government request.

V.  THE COURT SHOULD PERMIT EVIDENCE REGARDING THE DEFENDANT'S STATUS AS A POLICE OFFICER AND MANDATED REPORTER OF CHILD ABUSE

The Court should permit the government to admit evidence regarding the fact that the defendant was a police officer at the time of the criminal offenses and that, as a police officer, he was a mandated reporter of abuse and thus was required to report suspected child abuse irrespective of the alleged abuser's identity—i.e., even against himself.   As discussed above, pursuant to Federal Rule of Evidence 404(b), evidence of intent, motive, knowledge, identity, absence of mistake and a common scheme or plan are admissible.  Here, the defendant made recorded statements about being a police officer.  Given the defendant's status as an officer who received training on child abuse, he was in a position to know that he was engaging in child abuse and should have reported it.  His failure to report—as required by law—was not a mistake but rather evidence of his mental state, plan, and scheme to engage in illegal sexual behavior with minors and hide his abuse of children from others, including law enforcement.  A person who is a "mandated reporter," i.e., a person who, by the nature of his/her professional position, is required by New York State statute to make reports to the State of suspected abuse or maltreatment of children, includes a police officer like the defendant.  See New York Social Service Law ("SSL") § 413; see also Kia P. v. McIntyre, 235 F.3d 749, 752 (2d Cir.2000) (footnote omitted), cert. denied, 534 U.S. 820 (2001).  Further, the government will provide evidence that the defendant's willful failure to report the abuse subjected him to civil and

18

criminal liability and was thus another reason why the defendant concealed his sexual

exploitation of children.  See N.Y. Soc. Serv. Law §§ 420(1), 420(2).

VI.     THE DEFENDANT SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE
        REGARDING HIS FAMILY, PURPORTED GIRLFRIEND OR HEALTH

        A.     Applicable Law

               The Federal Rules of Evidence ordinarily prohibit witnesses from proving good

character through specific instances of conduct.  See Fed. R. Evid. 405(a).  In addition, "[d]istrict

courts have broad discretion to balance the probative value of evidence against possible undue

sympathy or bias as well as prejudice."  United States v. Miller, 641 F. Supp. 2d 161, 167

(E.D.N.Y. 2009).  Courts have broad discretion to exclude evidence if it has "an undue tendency

to suggest decision on an improper basis, commonly, though not necessarily, an emotional

one[.]"  Fed. R. Evid. 403, Adv. Comm. Notes.  Indeed, when evidence is of limited probative

value, it should be excluded if it has the "potential to engender sympathy in an inappropriate

effort to excuse defendant's commission of the charged offenses."  Miller, 641 F. Supp. 2d at

167; see also United States v. Paccione, 949 F.2d 1183, 1201 (2d Cir. 1991) (affirming

preclusion of evidence that the defendant had son with cerebral palsy); United States v. Battaglia,

No. 05-CR-774 (KMW), 2008 WL 144826, at *3 (S.D.N.Y. Jan. 15, 2008) (precluding

"evidence of Defendant's family and personal status" as not "relevant to the issue of whether

Defendant committed the crimes charged"); United States v. Harris, 491 F.3d 440, 447 (D.C. Cir.

2007) (affirming preclusion of evidence designed "mainly to cast [the defendant] in the

sympathetic light of a dedicated family man").

        B.     Discussion

               Details about the defendant's family including his ex-wife, purported girlfriend or

health have no bearing on the issues in this case because they are not probative of whether the

defendant coerced or enticed minors into producing child pornography.  For example, whether

the defendant has a nice family or had a platonic relationship with an actual adult female, who he

referred to as his girlfriend or ex-wife, does not make it more or less likely that he engaged in the

acts alleged in the second Superseding Indictment.  See Fed. R. Evid. 401.  Moreover, the clear

purpose for introducing evidence at trial of these extraneous details would be to elicit sympathy

for the defendant or distract from the facts at issue.  The risk of juror confusion and unfair

prejudice is manifest because the jury would be asked to look past the defendant's conduct in this

case.  This sort of emotional appeal to the jury's sympathy should be excluded under Rule 403.

VII.   THE DEFENDANT SHOULD BE PRECLUDED FROM CROSS EXAMINING THE
       GOVERNMENT'S WITNESSES ON OR OTHERWISE CHALLENGING THE
       LEGALITY OF THE SEARCH WARRANTS AND OTHER SEARCHES EXECUTED
       IN THIS MATTER

       The Court should preclude the defendant from arguing that the search of his

residence or his HP lap top device were unlawful or otherwise improper.  Federal Rule of

Evidence 104(a) makes clear that "[p]reliminary questions concerning . . . the admissibility of

evidence shall be determined by the court."  Fed. R. Evid. 104(a); see also Weinstein's Federal

Evidence, § 104.17.  Indeed, determinations of law, such as whether the defendant's Fourth

Amendment rights were implicated and violated, are for the Court, not the jury.  Here, the

government obtained search warrants for the defendant's residence and HP laptop.  These search

warrants were provided to the defendant.  The defendant challenged the search of his HP laptop,

and the Court denied his motion to suppress.  See ECF No. 36.  Because the issue was litigated

and decided, the defendant should be precluded from re-arguing it in front of the jury.

Additionally, the defendant did not move to suppress or otherwise challenge the legality of the

search of his residence and thus waived his right to challenge that warrant.  See United States v.

Howard, 998 F.2d 42, 52 (2d Cir. 1993) ("The failure to file a timely motion [to suppress]

constitutes a waiver."); see also United States v. Wilson, 11 F.3d 346, 353 (2d Cir. 1993)

(finding waiver where defendant filed suppression motion three weeks after court-imposed

deadline for such motions).

Accordingly, the Court should preclude the defendant from asking questions that

relate solely to the legality of the search warrant regarding the HP laptop executed and the search

of the defendant's residence.

VIII.   THE COURT SHOULD PRECLUDE EVIDENCE AND ARGUMENT CONCERNING
        POSSIBLE PUNISHMENT AND COLLATERAL CONSEQUENCES

A.   Applicable Law

Evidence regarding possible consequences the defendant may face if convicted

should be precluded because it is not relevant.  Pursuant to Rule 401 of the Federal Rules of

Evidence, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable

than it would be without the evidence; and (b) the fact is of consequence in determining the

action."  Generally, relevant evidence is admissible and "[i]rrelevant evidence is not admissible."

See Fed. R. Evid. 402.  "[T]he district court has broad discretion to exclude evidence that is

irrelevant . . . ."  United States v. Edwards, 631 F.2d 1049, 1051 (2d Cir. 1980); see also Fed. R.

Evid. 403.  The defendant's punishment is not a fact "of consequence" to be determined at trial.

Therefore, any evidence of those issues is not relevant.  See Shannon v. United States, 512 U.S.

573, 579 (1994) ("Information regarding the consequences of a verdict is . . . irrelevant to the

jury's task.").

Such evidence is not only irrelevant, but "invites [jurors] to ponder matters that

are not within their province, distracts them from their factfinding responsibilities, and creates a

strong possibility of confusion."  Id.  Indeed, jurors are routinely instructed not to consider a

defendant's punishment in determining a defendant's guilt.  See generally, Sand, et al., Modern

Federal Jury Instructions ("Sand"), Instruction 9-1 (2017 ed.); see also Shannon, 512 U.S. at 579 (a jury "should be admonished to reach its verdict without regard to what sentence might be imposed [and] not to consider the consequences of their verdicts . . . ." (internal citation omitted)); United States v. Watts, 934 F. Supp. 2d 451, 464-65 (E.D.N.Y. 2013) ("[I]t is well-established precedent that jurors should not be informed about the possible consequences of their verdict due to the likelihood that prejudice, unfairness, and confusion that would result.").

Courts have repeatedly precluded evidence of the potential sentences defendants face on the grounds that such evidence is irrelevant, unfairly prejudicial and outside the province of the jury.  See, e.g., United States v. Blume, 967 F.2d 45, 49 (2d Cir. 1992) ("Federal courts usually instruct juries not to consider a verdict's consequences"); United States v. Lewis, 110 F.3d 417, 422 (7th Cir. 1997) (holding that district court correctly refused to permit defendant to argue about the severity of his possible punishment); United States v. DiMarzo, 80 F.3d 656, 660 (1st Cir. 1996) (district court "soundly excluded" evidence of a potentially harsh sentence because such evidence "would have necessitated an unwarranted departure from the fundamental division of responsibilities between judge and jury").  In short, guilt should determine punishment, not the other way around.  See United States v. Thomas, 116 F.3d 606, 614 (2d Cir. 1997) ("Nullification is, by definition, a violation of a juror's oath to apply the law as instructed by the court . . . . We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that the courts may permit it to occur when it is within their authority to prevent.").

B.    Discussion

The Court should preclude the defendant from referencing at trial any consequences of his conviction.  The defendant faces a mandatory statutory sentence of between

fifteen years and life imprisonment if convicted of either the first or the second count in the

second Superseding Indictment.  Although the defendant has not suggested that he intends to

introduce any discussion of these consequences at trial, out of an abundance of caution the

government moves to preclude at trial any discussion of the defendant's possible punishments or

collateral consequences of conviction.  Such information could only serve to confuse the jury,

invite the jury to consider irrelevant information and potentially ignore the Court's instructions

due to sympathy for the defendant.  Courts have consistently recognized that juries have no right

to nullify, and "trial courts have the duty to forestall or prevent such conduct."  Id. at 616.

Therefore, the Court should preclude the defendant from referencing potential punishment and

collateral consequences at trial.[4]

The government previously conferred with defense counsel about this request.

Defense counsel informed the government that the defense did not oppose this government

request.

IX.    EVIDENCE AND ARGUMENT REGARDING OTHER SEXUAL BEHAVIOR BY
       THE VICTIMS AND/OR ANY PURPORTED SEXUAL PREDISPOSITIONS OF THE
       VICTIMS ARE INADMISSIBLE UNDER FEDERAL RULE OF EVIDENCE 412

       A.    Applicable Law

Federal Rule of Evidence 412 expressly provides that, in a criminal proceeding

involving sexual misconduct, "evidence offered to prove that a victim engaged in other sexual

---

[4] Nevertheless, to the extent that defendant exercises his right to testify, the government
should be permitted to cross-examine him regarding the potential consequences of conviction
that he faces because, under those circumstances, it is relevant to the defendant's credibility as a
witness.  See Davis v. Alaska, 415 U.S. 308, 316 (1974) (discussing use of cross-examination to
reveal "possible biases, prejudices, or ulterior motives of the witness as they may relate directly
to issues . . . in the case at hand.  The partiality of a witness is subject to exploration at trial, and
is always relevant as discrediting the witness and affecting the weight of his testimony." (internal
quotation omitted)).

behavior" or "evidence offered to prove a victim's sexual predisposition" is not admissible,

except in three narrow circumstances.  Fed. R. Evid. 412(a).  Rule 412 "aims to safeguard the

alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping

that is associated with public disclosure of intimate sexual details" and to "encourage[] victims

of sexual misconduct to institute and to participate in legal proceedings against alleged

offenders."  Fed. R. Evid. 412 advisory committee note.  The provisions of Rule 412 apply in

"civil or criminal proceeding involving alleged sexual misconduct."  Fed. R. Evid. 412(a).  See,

e.g., United States v. Alvarez, 601 F. App'x 16, 5 (2d Cir. Feb. 3, 2015) (applying Rule 412 to

exclude evidence of other sexual behavior by an alleged victim of violations of 18 U.S.C. §

2422); United States v. Elbert, 561 F.3d 771, 776 (8th Cir. 2009) (applying Rule 412 to violation

of 18 U.S.C. § 1591 involving minor victims); United States v. Rivera, No. 13-CR-149(KAM),

2015 WL 1886967, at *5 (E.D.N.Y. Apr. 24, 2015) (applying Rule 412 to exclude evidence of

other sexual behavior by an alleged victim of violations of 18 U.S.C. § 2422); United States v.

Graham, No. 12-CR-311(RJA), 2013 WL 321568, at *1 (W.D.N.Y. Jan. 28, 2013) (applying

Rule 412 to preclude evidence of sex trafficking victims' prostitution both prior to and following

the defendant's conduct).

    Rule 412 imposes clear limits, described more fully below, on a defendant's

ability to introduce evidence that a victim engaged in other sexual behavior or has a propensity to

engage in sexual acts.  As Judge Posner has explained, the policy rationale behind the rule

encourages victims of sex offenses to come forward: "If admissible, such evidence would deter

many victims of sexual abuse from testifying. . . ."  United States v. Cephus, 684 F.3d 703, 708

(7th Cir. 2012) (finding that evidence of victim's prior prostitution was irrelevant to charge of

sex trafficking); see Fed. R. Evid. 412 advisory committee note ("Rule 412 has been revised . . .

to expand the protection afforded alleged victims of sexual misconduct."); see also 18 U.S.C.

§ 3771(a)(8) ("A crime victim has . . . [t]he right to be treated with fairness and with respect for

the victim's dignity and privacy.").

    B.    <u>Discussion</u>

        In this case, the government is not aware of any other sexual behavior or

predisposition of victims that would be relevant to the charged crimes, which involved the

defendant persuading, inducing, enticing and coercing Jane Doe #1 and Jane Doe #2 to produce

sexually explicit images, much less any other sexual behavior or predisposition that would

overcome the preclusive effect of Federal Rule of Evidence 412.

        1.    <u>The Narrow Exceptions to Rule 412's General Policy of Exclusion Do Not
Apply</u>

        Rule 412 is subject to three narrow exceptions in criminal cases.  These

exceptions are: (1) to prove a person other than the defendant was the source of semen, injury, or

other physical evidence; (2) to show the victim consented to sexual activity with the defendant;

or (3) to avoid a violation of the defendant's constitutional rights.  Fed. R. Evid. 412(b)(1).  If a

defendant intends to introduce evidence of a victim's other sexual behavior or alleged sexual

predisposition under one of these exceptions, the rule requires the filing of a sealed motion no

less than fourteen days before trial that "specifically describes the evidence and states the

purpose for which it is to be offered," with notice to the victim or the victim's guardian.  Fed. R.

Evid. 412(c)(1).  Failure to do so without good cause should result in automatic exclusion.

<u>United States v. Romone</u>, 218 F.3d 1229, 1235-36 (10th Cir. 2000).

        In this case, even if the defendant files a timely motion under Rule 412(c), the

evidence remains inadmissible.  The first two exceptions clearly do not apply on the facts of this

case.  As to the first exception, this is not a case where the evidence involves "semen, injury, or

other physical evidence," which could be alternatively explained by evidence of a different perpetrator.  This is a case involving internet-based communications between the victims and the defendant, not a physical, sexual assault.  <u>See, e.g.</u>, <u>Elbert</u>, 561 F.3d at 776 (finding that neither of first two exceptions applied in sex trafficking case because defendant was not charged with sexually assaulting victims).  As to the second exception, the victims did not have sex with the defendant, so consent is irrelevant.  More importantly, a minor cannot consent to the production of child pornography.  <u>See</u> 18 U.S.C. § 2256.  The third exception also does not apply, for the reasons discussed below.

a. <u>The Exclusion of Other Sexual History Evidence Does Not Violate the Defendant's Constitutional Right to Present a Defense</u>

Although a defendant has the constitutional right to present a defense, "[t]he accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence."  <u>Taylor v. Illinois</u>, 484 U.S. 400, 410 (1988); <u>United States v. Bifield</u>, 702 F.2d 342, 350 (2d Cir. 1983) ("A criminal defendant's right to present a full defense and to receive a fair trial does not entitle him to place before the jury evidence normally inadmissible."); <u>Elbert</u>, 561 F.3d at 777 ("The Confrontation Clause only requires admission of probative evidence."); <u>Doe v. United States</u>, 666 F.2d 43, 47 (4th Cir. 1981) ("[A]n accused is not constitutionally entitled to present irrelevant evidence."); <u>see also</u> Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

Here, any evidence of the victim's other sexual behavior or any purported "sexual predisposition" evidence is wholly irrelevant to the charges against the defendant.[5]  The exclusion of evidence on those topics is thus appropriate.

> b.   Any Other Sexual History Evidence Should Be Excluded Under Federal Rule of Evidence 403

Even assuming arguendo that evidence of the victims' unrelated sexual activity or predisposition is relevant, any probative value is marginal at best and substantially outweighed by the dangers of unfair prejudice, confusion of the issues, misleading the jury, and embarrassing the victims, and it should thus be excluded pursuant to Rule 403.  See Fed. R. Evid. 403; United States v. One Feather, 702 F.2d 736, 739 (8th Cir. 1983) ("The policy of Rule 412, to guard against unwarranted intrusion into the victim's private life, may be taken into account in determining the amount of unfair prejudice under Rule 403.").

The key issue in this case is whether the defendant enticed the victims to produce sexually explicit images, believing that Jane Doe #1 and Jane Doe #2 were, respectively, minors.  The question is not whether the victims engaged in any other sexual activity, or had any particular "sexual predisposition."  Indeed, the defendant's solicitation and receipt of child pornography from minors was illegal regardless of the minors' background, experience or mental state.  As such, any evidence or argument regarding the victims' other sexual behavior (if any)

---

[5] In addition, prohibiting the defendant from cross-examining the victims about their other sexual behavior or any alleged predisposition will not violate the Confrontation Clause.  "[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."  Del v. Van Arsdall, 475 U.S. 673, 679 (1986) (internal quotation marks omitted) (emphasis in original).  Any questions posed to the victims or to third party witnesses regarding the victims' sexual behavior or any alleged predisposition would almost certainly call for speculation, and any assertions included in cross-examination questions could result in undue prejudice under Rule 403.

and alleged sexual predisposition would "imprudently focus[] attention on the minimally probative and collateral issue of [the victims'] character," and "distract the trier of fact from the main question of what actually happened on the particular occasion." Jones v. Goodwin, 982 F.2d 464, 470 n.8 (11th Cir. 1993) (quoting Fed. R. Evid. 404(a) advisory committee note).  It could also improperly suggest that the victims are of an immoral character who is undeserving of the law's protection.  See generally 1 McCormick on Evid. § 193 (7th ed. 2013) ("Learning of the victim's bad character could lead the jury to think that the victim merely 'got what [she] deserved' and to acquit for that reason.").  And, even if evidence of the victims' unrelated sexual activity is somehow marginally relevant, its exclusion is still warranted under Rule 403 because it would tend to confuse and distract the jury and cause undue prejudice to the government.

      For all of these reasons, the Court should preclude the defendant from (1) introducing evidence of any type of "sexual predisposition" of the victims before or after they began communicating with the defendant or having engaged in other sexual behaviors, or having; or (2) otherwise referencing such inadmissible evidence during voir dire, opening statements, cross-examination, and closing arguments.  In addition, to the extent that the defendant intends to introduce such evidence, he should be required to file a motion with the Court in accordance with Rule 412(c) no less than two weeks prior to trial.

**CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court:

Dated:     Brooklyn, New York
           March 17, 2023

                              Respectfully submitted,

                              BREON PEACE
                              UNITED STATES ATTORNEY
                              Eastern District of New York
                              Attorney for Plaintiff
                              271 Cadman Plaza East
                              Brooklyn, New York 11201

                   By:    /s/ Chand W. Edwards-Balfour
                          Chand W. Edwards-Balfour
                          William P. Campos
                          Assistant United States Attorneys
                          (718) 254-6238