

U.S. Department of Justice

*United States Attorney
Eastern District of New York*

WPC/CWE
F. #2019R01291

*271 Cadman Plaza East
Brooklyn, New York 11201*

April 12, 2023

By ECF

The Honorable Frederic Block
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re: United States v. Timothy Martinez
           Criminal Docket No. 20-98 (S-2) (FB)

Dear Judge Block

      The government respectfully files this reply to the defendant's opposition to the government's motion in limine ("Opposition Brief" or "Def. Mot") (ECF No. 49) in the above-referenced matter. In the Opposition Brief, the defendant argues that he disagrees with the government's theory of the case, that the government needs to lay the appropriate foundation before introducing evidence, and that evidence of the defendant's status as a police officer should not be admitted. For the reasons stated herein, his motions should be denied.

I.     **The Defendant Does Not Dispute the Admissibility of The Defendant's Statements**

      The defendant argues that the government must first establish that the proposed Cash App and Twitter communications were created or sent by the defendant before offering them into evidence, that he does not believe evidence of these communications will bear out the defendant's intention to receive sexually explicit images of minor girls, that the government may not be able to establish that the "Timmay Twitter Account" communicated with an individual he believed to be under the age of 18, and that the government's assertions regarding the defendant's interview statements are wrong. (Def. Mot at 2–4.) But his arguments are flawed, and his motions should be denied.

      First, the Cash App and Twitter communications that the government seeks to introduce are direct evidence and excerpts that reflect discrete issues or patterns that go directly to the defendant's liability. In particular, the communications on Cash App and Twitter and are relevant to the issues of intent and user attribution—elements which the defendant suggests he

will challenge and which the government must prove at trial beyond a reasonable doubt. Further, during his interview with law enforcement, the defendant discusses the very Cash App and Twitter communications that the government seeks to introduce, and they each form the basis of the defendant's receipt and attempted receipt of child pornography charges—that he purchased from Miaa. For example, during his Twitter chat with Miaa, the defendant provided Mia with his Skype user name—that he used to communicate with Jane Doe #1 and Jane Doe #2, and told the individual using the Miaa account how much money he sent via Cash App for numerous sexually explicit videos that he thought were of the presumed underage Miaa account user, amounts of money which were simultaneously reflected on his Cash App account records.[1] (See TM_000024 and TM_000234.)

      Second, to the extent these exhibits contain statements of individuals other than the defendant, those statements are limited, as they are excerpts, and the Court can instruct the jury that statements other than those of the defendant are not being offered for their truth, but merely to place the defendant's statements, or how child pornography was purchased through Cash App and what was found on the defendant's laptop, in context. See United States v. Barone, 913 F.2d 46, 49 (2d Cir. 1990); United States v. Davis, 890 F.2d 1373 (7th Cir. 1989). For clarity, with respect to evidence related to Twitter and Cash App, the government only seeks to admit evidence of the defendant's single chat with Miaa on Twitter and his Cash App account record. And the approximately nine videos or images that form the basis of the receipt and attempt receipt of child pornography charge, are the images or videos shared during the single Twitter chat between the defendant and Miaa.

      The defendant's disagreements about how the government characterizes evidence and whether the government is able to lay the proper foundation for the admission of evidence are not matters to be determined during pretrial motion practice but instead to be argued by the parties before the jury during trial. Thus, the defendant's motions against the admission of the Twitter and Cash App records should be denied.

---

[1] Regardless of what the defendant intends to contest, the government has the burden of proving the defendant's guilt beyond a reasonable doubt. Accordingly, the government is required to provide evidence that the defendant was indeed the user of the Twitter, Skype, and Cash App accounts and that he was the individual corresponding with people therein. Moreover, as the Supreme Court has recognized, in analyzing the admissibility of evidence, the trial court should make its determinations "with an appreciation of the offering party's need for evidentiary richness and narrative integrity in presenting a case." Old Chief v. United States, 519 U.S. 172, 183 (1997). Thus, the government has the right and obligation to present evidence that the defendant was the user of the Twitter, Skype, and Cash App accounts.

## II. The Defendant's Employment as a Police Officer Is Highly-Probative Evidence of the Crimes Charged

The defendant claims that any mention of the defendant being a police officer and thus a mandated reporter of abuse is unnecessary and undermines his presumption of innocence. (Def. Mot at 5.) But he is wrong. The defendant's status a police officer is highly probative evidence of the crimes charged and substantially outweighs any danger of unfair prejudice.

Here, the defendant's employment as a police officer is relevant to demonstrate that the defendant was the user of the Tim.Sullen/Tom.Sullen Skype account and the relevant Timmay Twitter account, and thus the person communicating with Miaa, Jane Doe #1 and Jane Doe #2. For example, during the defendant's recorded interview with law enforcement agents on September 24, 2019, he specifically mentioned that he was a police officer and used his Twitter account to see what other officers were doing and used the same Twitter account to communicate with Miaa. (See TM_00001-0002.) It is also relevant because the evidence will show that the defendant used his training, knowledge of, and experience with identifying children who were victims of abuse and building a rapport with them, which put him in a position to manipulate and thereby persuade, entice and coerce minors into creating sexually explicit images and videos of themselves for him. See United States v. Deutsch, No. 18-CR-00502 (FB), (E.D.N.Y. Jun. 8, 2022) (Trial Transcript. at 8., with respect to a motion in limine to preclude any mention of the defendant's status as a teacher, the Court held that "[r]eference to [the defendant's] teaching, reference to his background is going to be okay.").

The defendant used the training, experience, and knowledge that he gained as a police officer to assist him in committing the crimes charged, and thus his employment as a police officer is relevant and probative evidence. Specifically, as a police officer, he was trained on: (a) how to identify victims of abuse, (b) how to interact with abused minors, including how best to communicate with them, and (c) how to build a rapport and trust in a relationship with child abuse victims. As a result, when he chatted with Jane Doe #1 and Jane Doe #2—for over three years, using Skype, he provided emotional support for issues with which they struggled and flattered them when they expressed insecurity (e.g., telling them that they were perfect and beautiful). These actions, which constitute textbook grooming behavior, were intended to and successfully enabled the defendant to manipulate vulnerable minors. See United States v. Brand, 467 F.3d 179, 203 (2d. Cir. 2006) (finding that evidence of "grooming," including attempting to gain affection, was evidence of attempted enticement of a minor because "child abuse is often effectuated following a period of 'grooming' and sexualization of the relations") (citation omitted). Even though Miaa was actually an adult, the defendant used the same approach in his conversations with the Miaa user as well. (See TM_000015.) It is only common sense that the defendant's exceptional ability to groom minors was informed by his professional experience.

Additionally, the defendant knew that images of child pornography were being offered for sale, through a twitter account, and available to individuals in New York City. He knew this because he purchased some. And, the defendant knew that certain websites which allowed individuals to meet for sexual contacts also allowed underage girls onto their internet platforms. The defendant knew or ought to have known that sometimes adult men asked those underage girls to engage in sex acts including displaying their genitalia and masturbating on

3

camera.  Further, the defendant knew this because he engaged in such conduct with underage girls.  In each instance, he did nothing to alert law enforcement about those websites or twitter accounts despite being a mandatory reporter of such potential abuse.

The government will not mention that the defendant should have reported himself, as that was simply an example of a requirement for mandated reporters.  However, it is highly relevant that the defendant accessed websites in which minors were sexually exploited by people including those that lived in New York but failed to report the websites despite having the knowledge of or reason to believe such abuses occurring.

Put simply, the defendant's status as a police officer—as a result of his own actions—is central to and inseparable from his conversations with Miaa, Jane Doe #1 and Jane Doe #2.  And his conversations on Skype are the means by which he enticed, coerced and persuaded Jane Doe #1 and Jane Doe #2 to produce child pornography.  Thus, to exclude such highly probative and demonstrably relevant evidence is unsupported by Rule 401 and the related case law.

Otherwise admissible evidence may be excluded at trial only if its probative value is "substantially outweighed" by the danger of unfair prejudice.  See Fed. R. Evid. 403.  "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the fact finder into declaring guilt on a ground different from proof specific to the offense charged." Old Chief v. United States, 519 U.S. 172, 180 (1997).  Put another way, unfair prejudice "'means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" United States v. Nachamie, 101 F. Supp. 2d 134, 141 (S.D.N.Y. 2000) (quoting Fed. R. Evid. 403 advisory committee's note) (internal quotation marks omitted).  Here, as set forth above, the evidence of the defendant's employment is highly probative and inextricably intertwined with the crimes charged.  Moreover, the relevancy is not substantially outweighed by the risk of unfair prejudice.  The defendant claims that identifying Mr. Martinez as a police officer would place him in a different position than other defendants and not afford him the full protections granted to every other defendant, since as a police officer, he will be viewed as an upholder of the law. (Def. Mot at 5.) Although the government agrees that it is troubling that the defendant, a police officer, preyed on vulnerable children in order to get them to create sexually explicit images and videos, this fact has clear evidentiary value, and it is no more inflammatory than either the crimes charged or the defendant's own myriad statements representing himself as a member of the United States armed forces.  Thus, there is nothing unfairly prejudicial about presenting evidence of his employment and training as a police officer.

4

**III.     Conclusion**

        For the reasons set forth above and in the government's motions in limine, as well, the government respectfully requests that the defendant's motions be denied.

Respectfully submitted,

BREON PEACE
United States Attorney

By:   /s/ Chand W. Edwards-Balfour
William P. Campos
Chand W. Edwards-Balfour
Assistant U.S. Attorneys
(718) 254-7000

cc:    Clerk of the Court (FB) (via ECF)
       Counsel of Record (via ECF)